Freeman, J.,
delivered the opinion of the court.
On the 31st of May, 1854, Catharine D. Williams, the complainant, gave her obligation to Thos. L. Williams, the intestate of defendant in the original bill, for the sum of $6,253.61. She was a widow, having a large estate, and had been the wife of a brother of Thos. L. Williams. Her son, Wm. I). Williams, and a nephew of Thos. L. Williams, was her agent for the management of her business, and as such collected *96 her monies and paid them out under her direction. In November, 1854, the sum of $5,500 was received by her son for a place known as the Dyke farm. This money, or $5,000 of it, was to be by him paid to his uncle, Thos. L., on the note of Catharine D., above referred to. About the time the money was received, perhaps before, "Wm. D. Williams, the agent of Catharine D., 'notified his. uncle, who resided at Knoxville, that this was or would be in hand, and that $5,000 of it. was to be paid on the note he held against his mother. Mrs. Williams and her son, W. D., resided in Greene county at the time. Thos. L. Williams, on learning the $5,000 was ready to be paid him on note, wrote to Wm. D. Williams, among other things, saying, “Scott, of Lick Creek, wants more money. I told him he could have it by making it absolutely safe. He must give good personal security, as well as a lien on the land which he said was to be bought with the money. I do not expect to be in East Tennessee much after my departure (his purpose being to visit Mississippi), and for this reason what little I own must be placed in circumstances precluding all contingency of loss.” ITe then adds that he would rather a man of the name of Sneed should have the money (as appears elsewhere in the record), because he deemed him the most prompt and reliable, and that the interest on the money could be more certainly realized from him when due. He says, however, Scott must have' a portion of what you intend to pay, on complying with my terms. On November the 18th he writes to Wm. D. Williams a letter, in *97 which he shows that he has received $3,000 of the money which had been sent to him, and tells him his mother’s note has been credited with that amount. He then says, “I would prefer Sneed should get the money in your hands,” that is, the balance of $2,000,. and gives as a reason that if Scott gets it there will be more trouble in collecting the interest than if it is in the hands of Sneed; that Scott was a trading man; and might become involved, so that in my absence the money might be lost. He then adds a fact which shows that Scott had evidently applied to him in person for this loan. “ He, Scott, told me he intended to buy a tract of land, and wanted a loan to help him pay for the land,” and then directs-that he must not have it unless he will give personal security equal to those on the other note, and also a deed of trust, and tells Wm. E. "Williams to get Barton to draw the deed of trust, and "to have it registered immediately, as the money now owned is my only reliance; it must be secured beyond all question against all further accidents. “The truth is,” he says, in conclusion on this subject, “that I would be glad to avoid Scott’s having the money, but he may have it on complying with the terms proposed,” etc. We cite the above facts as perhaps sufficient at present to raise the question for our decision.
The bill of Catharine D. Williams is filed to get the benefit of the $2,000 thus loaned to Scott as a credit on her note, in addition to the $3,000 which had been endorsed on it at the time of its receipt. This is resisted by the administrator of Thos. L. Wil- *98 liaras., on the ground mainly that Vm. D. Williams did not comply strictly with the directions of Thos. L. Williams, in loaning the money, by taking a deed ■of trust, as well as personal security, for the $2,000 loaned to Scott. That this money was directed to be paid on the $6,000, obligation of Catharine Williams is clear, and it is equally clear that the whole $5,000, instead of $3,000, would have been sent to the payee had it not been for his intervention in the matter, and his taking the control of the $2,000 loaned to Scott. It seems to us that the extracts from the ■above letters further show unmistakably that Thos. L. Williams treated this money as his own, and Wm. D. Williams as his agent in arranging the security for the loan as directed, but that Thos. L. had personally made, or agreed to make, the loan of this identical money to Scott. He tells him Scott, of Lick Creek, wants more money, from which, and another remark in the second letter as to the note being required to be “ as good as on the other note,” we see that he had loaned Scott money before, and that Scott had applied for this second loan. He then, speaking of this very loan, treats this money as his ■own, saying he did not expect to be in East Tennessee much after his departure to Mississippi, and for this reason what little I own must be placed in circumstances precluding all contingency of loss.” In the next letter he refers to this money as his own, saying, “ as the money now owned is my only reliance, it must be secured beyond all question against all further accidents.” In a word, the whole corre *99 spondence shows a careful man, engaged in loaning his money in order to realize an income from it, and looking carefully to the mode in which it shall be secured. If these facts, with others equally cogent in this record, do not show the reception of this money, with the assumption of the right to dispose of it, and an actual disposition of it by giving, direction to his agent as to form of security, by which it was to be made safe to him, he having effected the loan, or agreed to make it himself, we cannot well see how such a thing could be .shown. The simple question then is, whether a creditor who takes charge of money of his debtor, which money is proposed as a payment on his debt,- assumes to control it, and actually loans it to a party of his own selection, can claim that such money was not a payment on the debt simply because .of the fact that his agent, to whom he had given directions as to the security to be taken for the loan, fails to comply with those directions. This question is too clear for argument, and must be answered in the negative. We might add to the above by saying that Wm. D. Williams was not, as far as we can see, authorized to loan this money by Catharine Williams, and if he had done so, it would probably have been in violation of his duty to her; and having loaned it,, or rather having acted as agent of Thos. Jj. in completing the security for a loan which the said Thos. L. had effected, any departure from his instructions would render him responsible, nothing else appearing, to his principal for damages arising from his dereliction of duty. Yet it is clear that *100 the effect of the payment of the money by Catharine Williams could „ in no wise be defeated by such act on his part.
Without going into a discussion of other grounds on which the same result would be reached, this suffices for the conclusion that Catharine Williams is entitled to a credit for the $2,000, to be entered of the date when Thos. L. Williams directed the loan of this money to Scott.
John Williams files a cross bill in this case against Catharine Williams alone, asking a decree for balance of his debt. He will be entitled to a decree for this amount, which may be ascertained by a calculation from the face of the papers, or by reference to the clerk if deemed necessary.
This view of the case makes it unnecessary to investigate the questions that might arise as between Wm. D. Williams and Johnson on the facts in the record, as neither is made party ■ to the cross bill; and the conditional relief sought in the original bill against Johnson is defeated by the effect of this opinion in giving a credit on the note for the $2,000. A decree will be drawn in accordance with this opinion. John Williams, as administrator, will pay the costs of this and the court below, except the costs of making Wm. D. Williams, Johnson, and the other defendants named in the original bill, parties, which will be paid by Catharine Williams.